# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| DAVID MARTINEZ, §<br>  *Plaintiff* §<br> §<br> -vs- §<br> §<br> §<br> FREDDY'S FROZEN CUSTARD, *et al.* §<br>  *Defendants* § | SA-24-CV-00436-XR |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

On this date, the Court considered Defendant's motion for summary judgment (ECF No. 36), Plaintiff's response (ECF No. 40), and Defendant's reply (ECF No. 41). After careful consideration, Defendant's motion is **GRANTED**.

## BACKGROUND

On May 6, 2021, Plaintiff David Martinez purchased a burger from Freddy's Frozen Custard and Steak Burgers location at 6626 Blanco Road in San Antonio, Texas (the "Restaurant"). Plaintiff returned to work to eat the burger and, after several bites, bit into something hard, fracturing a tooth. He stopped eating and placed the remainder of the burger in the refrigerator. Plaintiff does not possess and cannot identify the object and believes that he swallowed it.[1]

Plaintiff seeks to recover for his injuries from Freddy's, LLC ("Freddy's"), the franchisor of the Restaurant, alleging claims sounding in negligence and products liability. *See* ECF No. 2-20.[2] Freddy's asserts that it did not owe Plaintiff a duty of care under either theory of liability because it merely licenses its name to the owner and operator of the Restaurant, South Texas Custard 3, Ltd. ("South Texas"), and does not control South Texas, the Restaurant, or its beef supplier, K2d, Inc. ("K2d").

---

[1] ECF No. 37, Ex. B, Martinez Dep. at 27:19–21; 28:4–7, 28:22–29:4, 32:10–16.

[2] Freddy's is incorrectly named as "Freddy's Frozen Custard and Steakburgers" in the petition. *See* ECF No. 2-20.

**I.      Restaurant Operations**

Since 2008, the Restaurant has been owned and operated by a South Texas under a license agreement with Freddy's (the "Agreement"). *See* ECF No. 37, Ex. A.

The Agreement provides that South Texas shall "retain and exercise management and control over the Restaurant and its operations," *id.* § 15.1; that South Texas must hold itself out as independently owning the Restaurant and operating as an independent contractor under a license from Freddy's, *id.* §§ 10.3, 15.2; and that the Agreement does not create a fiduciary, partnership, or employment relationship between the parties, *id.* § 15.2. Consistent with South Texas's independence, the Agreement also excuses Freddy's from liability for South Texas's conduct:

> Licensor shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action, or by reason of any act or omission of Licensee in its conduct of the licensed business, or any claim or judgment arising therefrom against Licensor.

*Id.*

Although Freddy's "is not responsible for supplying, and does not guarantee the availability of, products or supplies for South Texas' inventory," *id.* § 7.4, Freddy's retains approval authority over products and suppliers that are not already approved or required under the Agreement or Licensor manual to maintain "substantial uniformity of quality" across its franchise locations, *id.* §7.1:

> The Restaurant shall offer for sale only the products and services, and shall only purchase, lease, install, and **use the types and/or brands of food products** . . . and other items or services **specified in this Agreement and the Licensor Manual, or approved in writing by Licensor** as being consistent with Licensor's standards and specifications[.]
>
> **Licensor may from time to time designate approved suppliers of products and services**[.]

> Licensee agrees that it shall **purchase and offer for sale all products that Licensor may uniformly designate** for all System Licensees to purchase and offer for sale in accordance with the Licensor Manual[.].

*Id.* § 7.1 (emphasis added).

Andrew Thengvall, Freddy's Chief Development Officer, testified that Freddy's did not control the day-to-day activities of the Restaurant. ECF No. 37, Ex. D, Thengvall Dep. at 40:17–23. Although the Agreement permits Freddy's to require franchisees to use specific brands and products, *see id.*, Ex. A § 7.1, South Texas was responsible for selecting its own beef supplier, *see id.*, Ex. D, Thengvall Dep. at 66:6–17. Specifically, South Texas had the option of choosing from a pre-approved list of two or three beef suppliers, including K2d, or seeking approval from Freddy's to use a supplier outside the list. *Id.* at 65:11–24, 66:6–17. Mr. Thengvall further confirmed that Freddy's did not own or control any of the pre-approved suppliers. *Id.* at 69:4–14.

## II. Procedural History

On May 1, 2023, Plaintiff commenced his original action in state court, alleging claims for negligence, negligence per se, products liability, and gross negligence against Freddy's, misnamed as "Freddy's Frozen Custard & Steakburgers." *See* ECF No. 1-2. The petition also named K2d, the meat processor, as a defendant, but the state court granted K2d's motion for summary judgment shortly before the case was removed to federal court.

In the original petition, Plaintiff represented that the amount in controversy was not more than $75,000.00. *Id.* ¶ 2.3. In March 2024, however, Plaintiff amended his petition, stating that he had suffered over $1,000,000 in damages. *See* ECF No. 2-20 ¶ 3.4. Based on this updated amount in controversy, Freddy's removed the case to federal court, asserting federal diversity jurisdiction. *See* ECF No. 1 at 4–5.

Following removal, Plaintiff sought in July 2024 to join South Texas (and several other related entities) as defendants. *See* ECF No. 32. The Court denied the motion as futile, noting that the claims against the proposed defendants (arising out of a 2021 injury) appeared to be time-barred, and Plaintiff failed to offer an explanation for the delay that would justify equitable tolling of Texas's two-year statute of limitations. ECF No. 35 at 6–7. Accordingly, Freddy's is the only remaining defendant in this action.

Freddy's now seeks summary judgment on all Plaintiff's claims, arguing that it did not owe Plaintiff a duty of care because it did not maintain or exercise actual or contractual control over the Restaurant, South Texas, or K2d. *See* ECF No. 36.

## DISCUSSION

### I. Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are

not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**II.    Analysis**

    **A.    Negligence**

A negligence claim requires "(1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). "The threshold inquiry in a negligence case is duty." *Id.*

        **1.    Freddy's did not owe Plaintiff a duty of care**

To determine whether a franchisor is vicariously liable for a franchisee's conduct, the Court considers whether the franchisor has the right to control the franchisee with respect to the details of that conduct. *See State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 627 (Tex. 1998). "To trigger vicarious liability, the right to control must extend to the specific activity from which the injury arose." *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 911–12 (Tex. App.—Fort Worth 2009, pet. denied); *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993). Further, the control must extend to the "means, methods, or details" of the franchisee's work. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 865 (Tex. 2021).

A party can prove the right to control by evidence of (1) a contractual agreement that explicitly assigns the franchisor a right to control; or (2) the franchisor's actual exercise of control. *Coastal Marine Serv. of Tex. v. Lawrence,* 988 S.W.2d 223, 226 (Tex. 1999). Absent clear facts to the contrary, under typical circumstances, a franchisee is an independent contractor. *Dulce Rests., L.L.C. v. Tex. Workforce Comm'n*, No. 07-19-00213-CV, 2020 WL 5755016, at *5 (Tex. App.—Amarillo Sept. 25, 2020, no pet.) (mem. op.).[3] Neither a right to receive reports nor a right to

---

[3] *See also Reddy*, 2015 WL 1247349, at *3–4 ("A contract expressly providing that a person is an independent contractor is determinative of the relationship absent evidence that the contract is a mere sham or subterfuge designed to conceal the true legal status of the parties or that the contract has been modified by a subsequent agreement between the parties.") (citations omitted).

inspect progress are sufficient to impose vicarious liability on a franchisor. *See Shell Oil Co. v. Khan*, 138 S.W.3d 288, 295 (Tex. 2004); *Bell v. VPSI, Inc.*, 205 S.W.3d 706, 714, 720 (Tex. App.—Fort Worth 2006, no pet.). Nor are requirements that a franchisee comply with another company's rules and regulations or with applicable standards, laws, and regulations governing the franchisee's performance. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606–07 (Tex. 2002); *Doe v. YUM! Brands, Inc.*, 639 S.W.3d 214 (Tex. App.—Houston [1st Dist.] 2021, no pet.).

In general, "merely retaining . . . supervisory rights [does] not rise to a degree of control high enough to impute liability." *McNeel v. Kiddie Acad. Domestic Franchising, LLC*, No. 3:19-CV-178, 2021 WL 920108, at *2 (S.D. Tex. Mar. 10, 2021). Indeed, courts in Texas have acknowledged that oversight as to some day-to-day operations is necessary for a brand to maintain its trademark through quality control and uniformity and is in sufficient alone to establish control. *See, e.g.*, *Doe (K.E.C.) v. G6 Hosp., LLC*, 750 F. Supp. 3d 719, 738–39 (E.D. Tex. 2024); *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 1:24-CV-109-DAE, 2024 WL 4224915, at *8 (W.D. Tex. Aug. 30, 2024) ("Under agency principles, allegations 'tending to show that the franchisors' involvement was limited to uniformity and standardization of the brand have been found to be insufficient to establish complete control over the day-to-day operations of the franchisee's business.'" (quoting *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 708–09 (E.D. Mich. 2020)).

Moreover, "[a] possibility of control is not evidence of a 'right to control' actually retained or exercised." *Domino's Pizza, L.L.C. v. Reddy*, No. 09-14-58-CV, 2015 WL 1247349, at *4 (Tex. App.—Beaumont Mar. 19, 2015, pet. denied), *cert. denied*, 137 S. Ct. 395 (2016) (citing *Lawrence*, 988 S.W.2d at 226). Instead, courts generally limit vicarious liability to circumstances in which the franchisor has "retained a right to control the 'operative details,'" i.e., when the

7

franchisor reserves the right to "enter upon the premises of the franchised business and exercise *complete authority* with respect to the operation and administration of the franchised business." *McNeel*, 2021 WL 920108, at *2–3 (alteration marks omitted) (emphasis in original).

Plaintiff insists that Freddy's owed him a duty of care because, "[b]ased on the cited Agreement terms and Thengvall testimony, Defendant exercised and retained extensive control over their Licensees choice of meat processors/distributors." ECF No. 40 at 7. Here, Plaintiff relies on *Read v. The Scott Fetzer Co.*, in which the Texas Supreme Court's imposed vicarious liability on a vacuum cleaner manufacturer that required door-to-door salesmen to perform in-home demonstrations of its products. *See id.* at 7–11 (citing *Read*, 990 S.W.2d 732 (Tex. 1998)). The Court found that, even though the manufacturer's contract was with the *distributors* rather than the dealers, the manufacturer (Kirby) owed a duty to the customers who received these in-home demonstrations. When a customer was sexually assaulted by a dealer, the Court found that, by requiring in-home demonstrations, Kirby retained sufficient control over the methods and location of distributor's marketing techniques to impose a duty of care to customers. Indeed, the in-home demonstration requirement was the very aspect of the marketing process that posed a risk to customers.

*Read* is inapposite here, however, because Freddy's did not retain or exercise sufficient control over the operative details of South Texas's selection of beef suppliers or preparation to trigger a duty of care under Texas law. While Freddy's maintained a supplier approval process, courts treat such provisions as serving brand uniformity, not as evidence of detailed, instrumental control over the methods or processes that produced Plaintiff's injuries. *Doe (K.E.C.)*, 750 F. Supp. 3d at 738–39; *Doe*, 2024 WL 4224915, at *8. Freddy's oversight did not rise to the level of controlling the day-to-day "means, methods, or details" of South Texas's procurement and

8

handling of K2d's beef products, let alone either K2d's meat processing activity. *Hernandez*, 622 S.W.3d at 865. Mere participation in brand management and supplier approval—without direct control over the harm-producing activity—is insufficient to establish that Freddy's owed Plaintiff a duty of care.

### 2. Plaintiff has not shown a breach of duty or proximate cause

Even if Plaintiff had demonstrated a fact question as to whether Freddy's owed him a duty, there is no evidence that Freddy's failed to act as a reasonably prudent franchisor would have under the circumstances.[4] Indeed, Plaintiff has not explained what Freddy's should have done to satisfy its purported duty of care and prevent his injuries. *See* ECF No. 40 at 2 (asserting that Freddy's "failed to act reasonably to ensure, inspect and/or monitor the process by which K2d processed and distributed the burger meat to Freddy's, LLC and [South Texas].").

His theory of liability relies on Freddy's general authority to approve suppliers, not any specific act or omission by Freddy's. But Plaintiff has not established that Freddy's approval of K2d as a supplier caused his harm. The record contains no evidence of prior "red flags"—such as incidents, recalls, warnings, or industry custom—that would obligate Freddy's to a higher degree of oversight of K2d. *Cf. Read*, 990 S.W.2d at 734 (noting that vacuum dealer's deviant history would have been discovered if manufacturer had performed or required a background check).

---

[4] Plaintiff cannot rely on the doctrine of *res ipsa loquitur* to infer that Freddy's was negligent from the mere fact that the accident happened because, among other reasons, such an inference "is not available to fix responsibility when any one of multiple defendants, wholly independent of each other, might have been responsible for the injury." *Esco Oil & Gas, Inc. v. Sooner Pipe & Supply Corp.*, 962 S.W.2d 193 (Tex. App.—Houston 1998, pet. denied).

*Res ipsa loquitur* applies only when (1) the character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred, and (2) the thing which caused the injury is shown to have been under the *management and control* of the alleged wrongdoer." *Bond v. Otis Elevator Co.*, 388 S.W.2d 681, 686 (Tex. 1965) (emphasis added). Given the sparse record, the Court has no basis for fixing responsibility on Freddy's as opposed to South Texas or K2d. Indeed, by his own testimony, Plaintiff could not confirm with any certainty that the object that broke his tooth was *inside of the burger*. ECF No. 37, Ex. B, Martinez Dep. at 57:5–9 Here again, Plaintiff's claim fails because there is no evidence that Freddy's was ever in control of the object that caused his injuries.

Plaintiff's inability to define Freddy's purported breach with greater specificity is unsurprising given that the nature and origin of the hard object that injured him remain entirely unknown. Plaintiff, for his part, acknowledged that he cannot identify the object that broke his tooth and cannot even be certain that it was in the burger. ECF No. 37, Ex. B, Martinez Dep. at 32:10–16, 57:5–9. Thus, it is impossible for Plaintiff to describe what Freddy's could have done to prevent his injuries because he does not know how the hard object ended up in his lunch in the first place.

In sum, Plaintiff has failed to present any competent evidence establishing a genuine issue of material fact as to Freddy's control over South Texas's beef supply or preparation that would establish a legal duty to Plaintiff. Nor has he identified an act or omission that purportedly breached such a duty and caused his injuries. Thus, Plaintiff's negligence claim fails as a matter of law.

## B.  Gross Negligence

Because Plaintiff's claim for negligence fails as a matter of law, he cannot establish a claim for gross negligence. *See Charles v. K-Patents, Inc.*, No. 1:17-CV-339, 2018 WL 9869532, at *8 (E.D. Tex. Aug. 10, 2018) ("[O]ne's conduct cannot be grossly negligent without being negligent.") (quoting *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex. App.—Austin 1990, writ denied)). Accordingly, Freddy's is entitled to summary judgment as to Plaintiff's claim for gross negligence.

## C.  Negligence Per Se

"Negligence *per se* is a tort concept whereby the civil courts adopt a legislatively imposed standard of conduct as defining the conduct of a reasonably prudent person." *Lopez-Juarez v. Kelly*, 348 S.W.3d 10, 27 (Tex. App.—Texarkana 2011, pet. denied). "To establish negligence *per se*, a plaintiff must prove: (1) the defendant's act or omission is in violation of a statute or

10

ordinance; (2) the injured person was within the class of persons which the ordinance was designed to protect; and (3) the defendant's act or omission proximately caused the injury." *Id.*

Although the operative petition makes a passing reference to a claim for negligence *per se*, Plaintiff does not—in his operative pleading or in his summary judgment briefing—identify a statute or ordinance allegedly violated by Freddy's. *See* ECF No. 2-20 ¶ 5.3. Accordingly, Plaintiff's negligence *per se* claim fails as a matter of law.

### D.   Products Liability

Plaintiff alternatively asserts a claim for products liability, alleging that Freddy's "engaged in the business of designing, manufacturing, distributing, and selling certain products, including the food product at issue in this lawsuit." ECF No. 2-20 ¶¶ 5.4–5.9.

But Texas courts have held that where, as a here, a franchisor is not the entity that supplied the product, the franchisor owes no duty to the injured party. *Aluminum Co. of Am. v. Alm*, 785 S.W.2d 137 (Tex. 1990) (citing Restatement (Second) of Torts § 388 (1965)). Courts require proof that the franchisor participated directly in the "chain of distribution" as manufacturer or distributor or by commercially supplying the product to the consumer. *Id.* at 140. In *Alm*, for example, the Supreme Court of Texas concluded that a franchisor, Seven-Up, "was not, as a matter of law, an appropriate intermediary through which the manufacturer could have discharged its duty to warn the ultimate consumer" about a defective aluminum bottle cap, despite being informed of the issue. *Id.* "Seven-Up," the Court reasoned, "was never in the chain of distribution and merely licensed JFW to bottle its product. At no time did Seven-Up exercise control over the instrumentality which caused the injury[.]" *Id.*

Here, Freddy's was never in the "chain of distribution" of the beef product that allegedly caused Plaintiff's injuries. While Freddy's supplied South Texas with a list of approved beef

vendors to choose from, Freddy's does not directly receive, order, or deliver K2d's beef products. *See* ECF No. 37, Ex. A § 7.4 (Freddy's "is not responsible for supplying products or supplies nor does Defendant Freddy's guarantee the availability of the products and supplies."). Accordingly, Plaintiff's claim for products liability fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 36) is **GRANTED**. A final judgment will follow pursuant to Rule 58.

The Clerk is **DIRECTED** to **CLOSE** this case.

It is so **ORDERED**.

**SIGNED** this 30th day of May, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE